Matthias, J.
Some time prior to the date of his assignment for the benefit of his creditors Charles Cook had received from the John Deere Plow Company certain farming implements which were in his possession when he made such assignment.
The John Deere Plow Company filed an intervening petition in the Probate Court of Van Wert County in which it set up its claim of ownership of said machinery. By agreement such machinery was sold and the proceeds thereof kept separate and held pending the final determination of the claim made by said plow company.
All the machinery in controversy was received and held by the assignor under and by virtue of a certain printed contract. The question presented is whether as between the plow com *299 pany and general creditors the assignor was merely the agent or factor of the plow company. If he was, then the plow company should be paid the fund, arising from the sale of the machinery in question; otherwise it should go to the general creditors.
Is this a contract of agency or a contract of sale?
Upon argument of this case counsel for the plow company urged as applicable to and as decisive of the question here presented the case of Bolles v. Dowagiac Manufacturing Company. That was a suit brought in Fulton county by the company against the agent for the price of a drill. The defense was that he did not purchase it, but was only an agent. The verdict of the jury was no cause of action, and judgment accordingly in common pleas. The circuit court reversed on the ground that the contract between the parties was one of sale. The Su-v preme Court reversed the circuit and affirmed the common pleas (72 O. S., 680). Neither of these decisions are reported, but we have before us, the record and briefs of counsel in the Supreme Court, and from those we conclude that the court of last resort must have held that the contract in question was one of agency, and not one of sale.
The record sets out a copy of that contract and the attorneys discuss it quite fully in their briefs. These we have studied quite carefully for the effect the decision upon the question raised and points presented should have upon the interpretation' of the contract before us.
Judge Sheets and Files & Paxson, counsel for the agent, as he was called, dissected the contract and made many deductions therefrom which supported the view that it was a contract of agency.
We shall review those, and make comparisons with the contract we have in the case at bar, for we assume that the Supreme Court was moved at least by some of such deductions and the argument based thereon to hold that the parties sustained to each other the relation of principal and agent.
It was urged in the first place that ownership carries with it the right of disposition to such person, at snch price and upon *300 such-terms as the owner- sees fit. In looking for customers he is not confined to any particular territory; neither is he limited in the price at which he may sell, nor kind of security he may take.
In that contract it was agreed that the defendant should be the sole agent for the plaintiff in the village of Delta and trade tributary.
The right of the “agent” was limited to sell machinery manufactured by the company to trade at Delta and that tributary thereto. He is not permitted to handle any other grain seeding machinery and must sell at ‘ ‘ list price. ’ ’
Machinery “sold” was to be settled for at a discount of twenty-five and ten per cent, in good farmers’ notes, or at a discount of twenty-five, ten and ten for cash. Notes to be drawn upon blanks furnished by the company, payable October 1st of the following year at six per cent.; notes to be indorsed by the agent and security taken if maker of doubtful solvency. The company agreed to fill all orders promptly as long as able, and “to appoint no other agent for said territory.”
Before going further we shall compare the two contracts in the particulars mentioned.
In the contracts before us Cook is not at any time referred to as an agent of the company, but always as the purchaser; he was not confined to any particular territory in which he could resell such machinery; there is no attempt to limit or control the price which he should ask or obtain for it. No restrictions are placed upon him as to the terms upon which he may sell or the kind of security which he may take; nor is he required to confine his sales to the machinery manufactured by the John Deere Plow Company.
It was required of Cook that he “the purchaser ” should settle for machinery by note or cash upon receipt of invoice.
The company makes no agreement to ship its machinery exclusively to Cook within any certain territory.
These are some of the striking differences in these two contracts.
Under the Bolles contract upon the receipt of a consignment .of goods the relation of debtor and creditor did not arise. It *301 was at best an - executory contract of sale, the agent agreeing to take what was left over at close of season at a certain price if the company elected to sell. There may not have been any goods left over; if so, the company may elect not to sell. They could take the goods back even though the agent wanted them and offered to pay for them. Certainly with such conditions the relation of vendor and vendee did not arise.
But under the contract before us the parties throughout refer to the transaction as one of sale. No right of election to sell or not to sell is retained by the company.
In the brief in the Bolles-Dowagiac case, to which we have been referred, counsel cited Norton v. Melick, 66 N. W., 780, and Lenz v. Harrison, 148 Ill., 598 (36 N. E., 567). We find the contracts involved in those cases are similar to the Bolles-Dowagiac contract, and therefore no doubt such decisions had influence upon the Supreme Court in the determination of the question in the Fulton county case.
Those contracts, however, are quite different from the one before us in this case.
True all these contracts are similar in one respect, and that is a stipulation that the ownership and right of peossession shall remain in the company, and the proceeds of sale be the property of the company, but this only has a tendency to show the attempt on the part of the company to retain a secret lien on the property.
It is expressly provided in the contract before us that “nothing in this clause shall release Cook from paying for such machinery.” Cook was bound to pay for all machinery sent him under this contract. The relation of debtor and creditor was thereby assumed.
There is absolutely nothing in this contract to show that the relation of agency was contemplated except the one clause referring to accounting for proceeds of sales. Can this .outweigh all else in the determination of the question of sale or agency ? It is the only feature which the two contracts referred to have in common. The rule must be applied, that all parts of the instrument are to be looked to, and to determine its real *302 character we are to look to its purpose rather than its name. Can it be said there is no sale? What element is lacking?
is it not rather a sale with an agreement of additional security by retaining nominal ownership of the property — in other words, a secret lien — just what Section 4155-2, Revised Statutes, was intended to prevent.
The contract involved in the Sells case, referred to by counsel, the agent having been found guilty of embezzlement, was quite like the Delta contract and quite different from the one involved herein.
We have also examined the contract involved in the Strother & DeCamp bankruptcy proceeding and find its tendency much more toward a contract of agency than the Cook contract. Yet it was held by Referee Richie, and approved by Judge Tayler, that such contract did not have the effect of creating any lien in favor of the company.
The discussion took considerable range, but it was finally stated by counsel for plow company, that the whole question is whether the transaction in question is a sale or whether Cook thereby became the factor. For the reasons we have stated we must conclude the relation of vendor and vendee were contemplated and that Section 4155-2, Revised Statutes, was neither successfully evaded nor complied with.
Whether the assignee for the benefit of creditors can assert rights greater than the assignor, is absolutely settled in this state; hence a consideration of many cases cited from other states need not be entered upon. The rule applicable here is found in Hanes v. Tiffany, 25 O. S., 549.
It was there contended that the mortgage given, although defective, was good against the mortgagor, and that his assignee stands in no better situation. But the court held that the mortgage being void as against creditors, there was no reason for the view that the assignee took only the rights of the debtor, and not those of the creditors, and that as to the assignee such mortgage was void.
In Kilbourne v. Fay, 29 O. S., 264, the court reaffirms this doctrine, and applies it in favor of an administrator of an insolvent estate.
*303 A similar holding in favor of assignee, notwithstanding such assignee had knowledge of the execution and improper filing of the mortgage, is found in Westlake v. Westlake, 47 O. S., 315, and in Betz v. Snyder, 48 O. S., 492.
The same rule is recognized as the settled law in this state in Besuden v. Besuden, 57 O. S., 508, and it is restated and applied' in favor of a receiver representing general creditors in Cheney v. The Maumee Cycle Co., 64 O. S., 205.
Railroad v. Locomotive Works, 93 U. S., 1003, contains much that is applicable to this case.
The decision of the Supreme Court of the United States in the case of York Mfg. Co. v. Cassell (a case from this state reported in 4 O. L. R., p. 327)., is quite unfavorable to the contention of the assignee in this case. But such decision can have little application to the case at bar. The Federal Supreme Court follows the state court in the interpretation and application of the laws of the state. From this decision it appears that there was brought to the attention of the court only the case of Wilson v. Leslie, 20 Ohio, 161.
In the Strother & DeCamp bankruptcy proceeding herein-before referred to, Judge Tayler held that the decisions of our Supreme Court must be followed and applied in the interpretation of that contract.
In the case of Jones v. Molster, Admr., 11 C. C., 432, the Circuit Court of the Fourth Circuit reviews the eases cited above and applies the doctrine of those cases to conditional sale contracts. We call attention to the discussion of the court in this case, and also to the syllabus in Harvey v. Locomotive Works, (92 U. S., 664), which is -found on page 438 of this decision.
But it is contended that Section 4155-2, Revised Statutes, is applicable only in event the sale is on the installment plan, and it is urged that it is so held in National Cash Register Co. v. Cervone, 76 O. S., 12. We can not so read it; nor do we see how the plain language of the statute can be so limited.— It includes such sales and all others where there is an attempt to retain nominal ownership or a lien upon property of which the vendee has possession. ' Its manifest purpose is to prevent secret liens. In the ease referi'ed. to tbe court had under consideration Sec *304 tion 4155-3, Revised Statutes. By this section the protection of the installment plan purchaser is sought. Section 4155-2 is for the protection of creditors.
Snook & Savage, for John Deere Plow Co.
Saltzgaber, Hoke & Osborn, for assignee.
We therefore hold that as to creditors of Cook the contract between him and the John Deere Plow Company was one of sale; that the vendee at the time of his assignment for the benefit of creditors having possession of the machinery delivered to him under such contract, and no copy of such instrument having been filed as provided by law, no lien was preserved as against the creditors; that the assignee is therefore entitled to the fund realized from the sale of such machinery.